OPINION OF THE COURT
FISHER, Circuit Judge.
Hartford Accident and Indemnity Company, Hartford Fire Insurance Company, First State Insurance Company, Alianz Global Risk U.S. Insurance Co., Fireman’s Fund Insurance Co. of Ohio, Century Indemnity Company, Pacific Employers Insurance Co., National Union Fire Insurance Company of Pittsburgh, Pa., Continental Insurance Company, Continental Casualty Company, and The Fair-child Corporation appeal the order of the District Court affirming the Bankruptcy Court’s denial of their motion to dismiss *272 Skinner Engine Company’s and American Capital Equipment’s Chapter 11 case for lack of good faith. For the following reasons, we will affirm.
I.
Skinner Engine Company (“Skinner”) allegedly manufactured asbestos-containing engines and engine parts for ships until some time in the 1970s. During the 1980s, Skinner began to be named as a defendant in a number of lawsuits alleging exposure to asbestos by merchant marines. None of these claims has ever resulted in a judgment against Skinner. Because these claims fell under admiralty jurisdiction, they were originally brought in the Northern District of Ohio in a special docket entitled MARDOC. In 1991, these MAR-DOC claims were transferred to the Eastern District of Pennsylvania. In 1996, the Court administratively dismissed all MAR-DOC claims, providing that these cases could be reinstated if claimants could show an asbestos-related compensable injury and probative evidence of exposure to the defendant’s products. In 2003, the Court clarified that the administrative dismissals were “not intended to provide a basis for excluding the MARDOC claimants from participating in settlement programs or prepackaged bankruptcy programs of a like nature or purpose.” In re Asbestos Products Liability Litigation (No. VI), Order Granting Relief to MARDOC Claimants with Regard to Combustion Engineering, Inc., Civil Action No. 2 MDL 875 (E.D.Pa. Feb.19, 2003).
After being bought and sold a number of times, Skinner was eventually purchased by American Capital Equipment (“ACE”) in 1998. On April 16, 2001, Skinner and ACE (“Debtors”) filed voluntary Chapter 11 bankruptcy petitions, citing the financial underperformance of Skinner and a slowdown in the automotive industry. Debtors’ disclosure made no mention of the outstanding asbestos claims against Skinner. At the time of filing, Skinner had approximately 29,000 asbestos claims pending against it. It had also purchased approximately $146,000,000 worth of insurance coverage for these claims. Most of these policies, which are Debtors’ only significant assets, were issued by the appellants in the present case (“Appellants”).
Debtors have proposed a series of different plans for reorganization, none of which have yet been confirmed. The most recent plan proposes, among other things, the creation of a trust designed to pay the asbestos claimants in accordance with particular matrices and mechanisms similar to those approved in other asbestos-related bankruptcies. Under this system, each asbestos claim would be audited under the oversight of the Bankruptcy Court, resulting in payments based on the severity of the claimant’s illness. As part of the plan, claimants who chose to “opt-in” would also be charged a twenty-percent “surcharge” on any recovery which would be earmarked to pay non-asbestos creditors. Claimants could also choose to “opt-out” and simply maintain their existing action in the District Court. The trust would be funded primarily by the proceeds from Skinner’s insurance policies. Debtors alleged that such a plan would allow them to satisfy the claims of the greatest number of creditors. Skinner’s unsecured creditors and asbestos claimants voted in support of this plan. Skinner’s insurers then initiated an adversary proceeding alleging that such an arrangement violated their contractual rights under the insurance policies.
In June 2005, Appellants filed a motion to dismiss the Chapter 11 petitions, arguing that the case no longer served a legitimate purpose under Chapter 11 and was no longer proceeding in good faith under *273 11 U.S.C. § 1112(b). Appellants alleged that the plan was not designed to maximize the value of the assets to the creditors, but instead was designed to gain an improper litigation advantage over the insurers by allowing the asbestos claimants to use truncated, court-monitored procedures to access the insurance policies in exchange for claimants’ agreement to hand over a portion of their insurance recoveries to other non-asbestos creditors. Following a series of hearings, the Bankruptcy Court ultimately issued an order denying the motion and staying the proceedings pending appeal. Appellants appealed the Bankruptcy Court’s order denying the motion to dismiss to the District Court. In a May 11, 2007 order, the District Court affirmed the Bankruptcy Court’s order denying Appellants’ motion to dismiss, finding that the plan maximized value to creditors and was not filed solely to gain a litigation advantage over creditors, and concluding that the Bankruptcy Court did not abuse its discretion in declining to dismiss Debtors’ Chapter 11 case for a lack of good faith. This timely appeal followed.
II.
The District Court exercised jurisdiction over the appeal of the Bankruptcy Court’s denial of Appellants’ motion to dismiss under 28 U.S.C. § 158(a)(1). We have jurisdiction over this consolidated appeal pursuant to id. §§ 158(d)(1) and 1291.[1] In assessing whether the good faith requirement of 11 U.S.C. § 1112(b) is satisfied, we must conduct a “fact intensive inquiry” to determine where a “petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.” In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir.2004) (internal citations and quotation marks omitted). “We therefore review for abuse of discretion the Bankruptcy Court’s refusal to dismiss a Chapter 11 petition for want of good faith.” Id. We will find an abuse of discretion where the decision “rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.” In re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir.1999) (internal citations and quotations omitted).
III.
As we explained in SGL Carbon, “Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b)” in the absence of good faith. 200 F.3d at 160-62.[2] Of particular relevance to the question of good faith is whether the petition serves a “valid bankruptcy purpose.” Integrated Telecom, 384 F.3d at 120. As the Supreme Court has explained, the two main functions of the bankruptcy law are (1) “preserving going concerns” and (2) “maximizing property available to satisfy creditors.” Id. at 119 (quoting Bank of Am. Nat’l Trust & Sav. Ass’n v. 203 N. *274 LaSalle St P’ship, 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999)). If neither of these purposes can be demonstrated, the petition will be dismissed. Id. In addition to serving a valid bankruptcy purpose, we also consider “whether the petition is filed merely to obtain a tactical litigation advantage.” Id. at 120; SGL Carbon, 200 F.3d at 165. If this is the sole purpose of the bankruptcy petition, the petition is considered to have fallen outside the legitimate scope of the bankruptcy laws. Id. at 164.
Appellants argue that the District Court erred when it concluded that the Bankruptcy Court did not abuse its discretion in declining to dismiss Debtors’ Chapter 11 case for a lack of good faith. Appellants first assert that Debtors’ Chapter 11 case does not serve a valid bankruptcy purpose because it does not seek to preserve a going concern or maximize available property to satisfy creditors. Debtors concede that Skinner no longer has any going concern value, but contend that their case still serves a valid bankruptcy purpose because it is nonetheless intended to maximize the value of the remaining assets to satisfy creditors. Although Appellants’ argument implies that both factors must be present, we recognized in Integrated Telecom that the lack of “going concern value” is but one factor to consider in the good faith analysis: “As the Bankruptcy Court recognized, Integrated is unquestionably ‘out of business,’ and therefore has no going concern value to preserve in Chapter 11 through reorganization or liquidation under the Bankruptcy Code”. The question therefore becomes whether Integrated’s petition might reasonably have “maximiz[ed] the value of the bankruptcy estate.” 384 F.3d at 120. As the District Court explained, while Appellants make a number of arguments that Debtors’ plan does not maximize the value of the estate, what these arguments actually take issue with is “how the value was maximized.” What is clear is that under Debtors’ plan, both the asbestos claimants and the unsecured creditors will be able to share in the assets of the estate — the asbestos claimants through the Court-administered claim assessment process, funded by the insurance policies, and the unsecured creditors through the surcharge. Outside of bankruptcy the asbestos creditors would have to pursue them claims through the court system and the unsecured creditors would not recover anything. On this basis alone, Debtors have satisfied their burden to show that them Chapter 11 case seeks to maximize the value of the bankruptcy estate for the benefit of the creditors.
Appellants also argue that Debtors’ Chapter 11 case is proceeding in bad faith because it now exists solely as a means for obtaining a tactical litigation advantage. However, Debtors have clearly stated that the plan was not intended to have any effect on the insurance contracts or on the pending adversary proceeding regarding insurance coverage. Appellants have not directed us to any clear evidence that the plan was intended to confer, or would result in, a particular litigation advantage to Debtors, over and above the advantages that a typical debtor may properly obtain by availing himself of the bankruptcy system. In both cases upon which Appellants rely, the debtors were not financially distressed and both admitted that they sought bankruptcy protection to gain a litigation advantage over creditors. See Integrated Telecom, 384 F.3d at 129 (debt- or admitted “in a smoking gun resolution approved by the Board” that petition sought to force a creditor to settle); SGL Carbon, 200 F.3d at 158 (debtor’s executives admitted in a conference call that they intended to use bankruptcy protection as a litigation tactic to combat the claims of the antitrust creditors). As distinct *275 from those cases, this case was brought by legitimately distressed entities, long before Appellants initiated any litigation. Moreover, Debtors’ creditors agreed with the proposed plan. On the basis of the record before us, we cannot conclude that Debtors’ Chapter 11 case now exists solely to gain a tactical litigation advantage and not, as Debtors argue, for the legitimate bankruptcy purpose of maximizing the value of assets available to the creditors. Therefore, Debtors have not violated the good faith requirement of 11 U.S.C. § 1112(b).
IV.
For the foregoing reasons, we will affirm the order of the District Court.

. Appellees challenged jurisdiction on the basis that the Bankruptcy Court's order was not a "final order” as required under 28 U.S.C. § 158(a). However, we are bound in this instance by our decision in In re Brown, where we stated that "an order denying a motion to dismiss a Chapter 11 proceeding is a final order within 29 U.S.C. § 158(a).” 916 F.2d 120, 124 (3d Cir.1990). In addition, we agree that Appellants had standing to appeal the denial of their motion to dismiss.

. 11 U.S.C. § 1112(b) provides that:
on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.